IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 05-54480-LMC |
| CITY OF CAMP WOOD, TEXAS, | § | |
| | § | CHAPTER 9 |
| DEBTOR. | § | |

# FIRST AMENDED PLAN OF ADJUSTMENT
# OF THE CITY OF CAMP WOOD

_____

Submitted By:

David S. Gragg
Marc J. Schnall
R. Glen Ayers, Jr.
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
Tele: (210) 736-6600
Fax: (210) 735-6889

ATTORNEYS FOR THE CITY
OF CAMP WOOD

DATED: May 2, 2007

# INTRODUCTION

The City of Camp Wood, Texas (the "Debtor" or the "City"), proposes this First Amended Plan of Adjustment pursuant to Chapter 9 ("Chapter 9") of Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 901, et seq.

# ARTICLE I.
# DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in this Plan that is not defined herein but that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules.

1.1     <u>Administrative Claim</u> means a Claim or any portion of a Claim which is a cost or expense incurred during the Case or incident to the Plan, that is allowed under Bankruptcy Code § 503(b) and that is entitled to priority under § 507(a)(1), including, without limitation, any actual and necessary costs and expenses of operating the Debtor and all wages, salaries, or commissions for services rendered after the commencement of the Case.

1.2     <u>Administrative Claims Bar Date</u> means the thirtieth (30th) day following the date of the Confirmation Hearing unless the Bankruptcy Court establishes a different date.

1.3     <u>Allowed</u> means, (i) when used with respect to an Administrative Claim, all or any portion of an Administrative Claim that has been Allowed by a Final Order, that was incurred by the Debtor in the ordinary course of business during the Case and as to which there is no dispute as to the Debtor's liability, or that has become Allowed by failure to object pursuant to the provisions of this Plan; and (ii) when used with respect to a Claim (other than an Administrative Claim), a Claim against the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing that category of proof of claim, as to which no Objection has been interposed; or if no proof of claim was timely filed, a Claim that has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent, as to which no Objection has been interposed; or a Claim as to which any Objection has been interposed, to the extent such Claim has been Allowed in whole or in part by a Final Order of the Bankruptcy Court.

1.4     <u>Ballot Date</u> means the date established by the Bankruptcy Court as the date by which all ballots voting on the Plan must be delivered in order to be counted.

1.5     <u>Bankruptcy Code</u> means Title 11 of the United States Code, as amended, which is applicable to this Case.

1.6     Bankruptcy Court means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, or such other court that may have jurisdiction with respect to the case of the Debtor under Chapter 9 of the Bankruptcy Code.

1.7     Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075 and, to the extent not inconsistent, the local rules of the Bankruptcy Court, as amended from time to time.

1.8     Bonds means those bonds designated as the "$3,535,000 City of Camp Wood, Texas Combination Limited Tax and Revenue Refunding Bonds (Camp Wood Convalescent Center Project) Series 1994".

1.9     Bondholder means a beneficial holder of one or more of the Bonds.

1.10    Bondholder Claim means a Claim in this Bankruptcy Case arising out of indebtedness owed in connection with one or more of the Bonds.

1.11    Business Day means any day except Saturday, Sunday, or a "legal holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.12    Case or Bankruptcy Case means the above-captioned and numbered administered Chapter 9 case of the Debtor, filed in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

1.13    Claim means (i) a right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; and (iii) a right to claim an ownership interest in property in which the Debtor holds legal title.

1.14    Claimant means a holder of a Claim.

1.15    Class means all of the holders of Claims which have been designated as a class in this Plan.

1.16    City means the City of Camp Wood, Texas.

1.17    Confirmation means the entry by the Bankruptcy Court of the Confirmation Order.

1.18    Confirmation Hearing means the hearing or hearings which will be held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

1.19    Confirmation Order means the Order confirming this Plan.

1.20 Convalescent Center means the Camp Wood Convalescent Care Center.

1.21 Contingent means, when used with respect to a Claim, a Claim that has not accrued or which is dependent upon a future event that has not occurred or may never occur.

1.22 Debtor means the City of Camp Wood, Texas.

1.23 Disallowed Claim means a Claim that is not Allowed.

1.24 Disclosure Statement means the Disclosure Statement filed by the Debtor in connection with this Plan as may be amended from time to time, and approved by the Bankruptcy Court.

1.25 Disputed Claim means a Claim against the Debtor that (i) is listed on the Schedules as disputed, contingent or unliquidated, (ii) has been determined in the Debtor's business judgment as invalid in whole or in part, or (iii) as to which an Objection has been timely Filed and which Objection has not been determined by Final Order.

1.26 Distribution Date means, as to each Claim entitled to a distribution under this Plan, the later to occur of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the date upon which the Claim becomes an Allowed Claim.

1.27 Effective Date means June 15, 2007.

1.28 Filed means filed with the Bankruptcy Court.

1.29 Final Order means an order of judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to file an appeal from or to seek review, rehearing or certiorari shall have expired and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed from, shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and no further hearing, appeal or petition for certiorari can be taken or granted or as to which any right to appeal or to seek certiorari, review, or rehearing has been waived.

1.30 Indenture means the August 1, 1994 Trust Indenture between Texas Commerce Bank, N.A., the original indenture trustee, and the Debtor.

1.31 Indenture Trustee means The Bank of New York Trust Company, N.A., the successor to JPMorgan Chase Bank, N.A. and Texas Commerce Bank, N.A. or such other person qualifying and serving in such capacity, as indenture trustee for the Bonds.

1.32 Objection means an objection to the Allowance of a Claim.

1.33 Order means an order or judgment of the Bankruptcy Court.

1.34     Person means an individual, corporation, partnership, association, joint stock company, joint venture, estate, trust, unincorporated association, unincorporated organization, government entity or unit or political subdivision thereof, or any other entity.

1.35     Petition Date means August 5, 2005.

1.36     Plan means this Plan of Adjustment which is filed in this Case under Chapter 9 of the Bankruptcy Code, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Rules and any Plan Documents to be executed in connection therewith.

1.37     Plan Documents means any documents necessary to be executed in connection with the Plan.

1.38     Post Confirmation Debtor means the City of Camp Wood, Texas as and after the Effective Date.

1.39     Schedules means the List of Claims filed by the Debtor as required by Section 924 of the Bankruptcy Code.

1.40     Secured Claim means a claim the repayment or the performance of which is supported by a Lien on assets of the Debtor.

1.41     Unsecured Claim means a Claim that is not (i) an Administrative Claim; (ii) a Secured Claim, or (iii) a Bondholder Claim.

# ARTICLE II.
# TREATMENT OF UNCLASSIFIED CLAIMS

2.1     Administrative Expenses.  Administrative expenses incurred in bankruptcy do not have to be classified as claims under the Bankruptcy Code, but must be disclosed and be reasonable.  However, the Administrative Claims are included in Class 1 for ease in reading and understanding the Disclosure Statement and Plan.  Under the Bankruptcy Code, the Administrative Claims of the Chapter 9 case are to be paid in full in cash on the Effective Date unless the holder agrees to a different treatment.  These expenses include all of the debt that the Debtor accrued post-petition.  The Plan allows the Debtor to reach agreements with the administrative expense holders for different treatment that would provide for payout over time together with interest.

2.2     Bankruptcy Fees.  All fees payable by the Debtor under 28 U.S.C. § 1930 shall be paid in cash in full as such obligation is incurred.

# ARTICLE III.
# DESIGNATION OF CLASSES
# OF CLAIMS

Pursuant to Sections 1123 and 506(a) of the Bankruptcy Code, the Debtor designates the following Classes of Claims.

    3.1    <u>Class 1</u>: Administrative Claims

    3.2    <u>Class 2</u>: Priority Claims

    3.3    <u>Class 3</u>: Secured Claims

    3.4    <u>Class 4</u>: Bondholder Claims

    3.5    <u>Class 5</u>: General Unsecured Claims

# ARTICLE IV.
# PROVISIONS FOR SATISFACTION
# OF CLAIMS

The Claims as classified in Article III hereof shall be satisfied in the manner set forth in this Article IV. Notwithstanding the treatment hereinafter set forth, the Debtor expressly reserves any rights under Section 510 of the Bankruptcy Code.

    4.1    **Class 1 - Administrative Claims.** Administrative expenses incurred in the bankruptcy do not have to be classified as claims under the Bankruptcy Code, but must be disclosed and be reasonable. However the Administrative Claims are included in Class 1 for ease in reading and understanding the Disclosure Statement and Plan. Under the Bankruptcy Code, the Administrative Claims of the Chapter 9 case are to be paid in full in cash on the Effective Date unless the holder agrees to a different treatment. These expenses include all the debt of the Debtor accrued post-petition. The Plan allows the Debtor to reach agreements with the administrative expense holders for different treatment that would provide for payout over time together with interest. The following are the known administrative claims:

    (i)    **Attorneys' Fees**
Langley & Banack, Inc. is the Debtor's attorney in this Chapter 9 Case. Langley & Banack will have accrued not less than approximately $175,000.00 in fees and expenses before the completion of this Case. Although not required under Chapter 9 of the Bankruptcy Code, Langley & Banack has agreed to file an application with the Bankruptcy Court seeking Court approval of its fees and expenses.

    (ii)    **Other Post-Petition Expenses**
The City has generally kept current on its normal accruing post-petition expenses. It is anticipated that the City will pay in full, or will reach an

agreement with, any such unpaid trade creditors which exist as of the Effective Date.

4.2 **Class 2 - Priority Claims.** Priority Claims constitute any Claims which may be entitled to priority status. The only known Claimants having Priority Claims fitting into this Class are the United States Internal Revenue Service, the Texas Workforce Commission, the Texas State Comptroller and the Texas Commission on Environmental Quality. During the Bankruptcy Case, the Debtor filed a Motion and received Court approval to pay these creditors in full, and has so paid these creditors. To the Debtor's knowledge, there are no remaining creditors in this Class and the Debtor will dispute any such Claims.

4.3 **Class 3 - Secured Claims.** To the Debtor's knowledge, there are no creditors in this Class. The Debtor will dispute any creditors asserting such secured status.

4.4 **Class 4 -Claims of Bondholders**. The Indenture Trustee will receive $1,422,194 of the net proceeds from the sale of the Convalescent Center which funds are currently held by the Debtor's attorney. Of this amount, $1,410,000 will be distributed by the Indenture Trustee as a principal reduction on the Bonds, reducing the outstanding principal balance to the proposed new principal balance of $2,000,000 (the "New Principal Balance"), in accordance with the terms of the Indenture and the Ordinance.

The Bonds will be restructured and future payment made on the Bonds as follows:

(i) The New Principal Balance of $2,000,000 will be amortized by semi-annual payments over 20 years at 5.0% per annum with an effective date of June 15, 2007. The first payment will be due on the Bonds on December 15, 2007. Each semi-annual Bond payment will be in the amount of $79,672.47.

(ii) The Indenture Trustee shall establish a Debt Service Reserve Fund in accordance with the Indenture and the Bond Documents. To fund this account, the Indenture Trustee will use both certain ad valorem tax revenues and rents it currently holds as well as the proceeds left over from the sale of the Convalescent Center after the $1,410,000 principal payment is made on the Bonds as described above. The Indenture Trustee shall initially fund the Debt Service Reserve Fund in the amount of $160,000. This sum is equal to two semi-annual debt payments on the New Principal Balance.

(iii) After funding the Debt Service Reserve Fund, the Indenture Trustee shall put $301.20 into the Interest and Sinking Fund in order to adjust for the requirement that the forthcoming scheduled calls on the Bonds under the amended Indenture and Ordinance be in $1000 increments.

(iv) Following the funding of the Interest and Sinking Fund, the Indenture Trustee shall pay the expenses of the Indenture Trustee and its counsel,

and then apply any monies remaining in its accounts to make a partial payment of pre- and post-petition accrued interest owed on the Bonds. After these monies have been depleted, any remaining Claim for accrued interest (pre- or post-petition) under the Bonds shall be deemed waived and forgiven.

Except as otherwise expressly amended in Article XIII of this Plan, the Ordinance, the Indenture and all other Bond-related documents shall in all respects remain in full force and effect.

4.5 **Class 5 - General Unsecured Claims.** The holders of Class 5 General Unsecured Claims are the general unsecured creditors (other than the Bondholder Claims). The total amount shown for Class 5 Claims on the Debtor's Schedule F is $125,041.79. The Proofs of Claim filed from this Class total approximately $43,000.00—the largest two of which are the claims of Uvalde Memorial Hospital in the amount of $15,294.87 and CPL Retail Energy in the amount of $26,667.47. The City vigorously disputes the amount of the obligations owing to Uvalde Memorial Hospital and CPL Retail Energy. The Debtor will set aside a total sum of $11,000 to be distributed as a 10% dividend to be paid pro rata to holders of Allowed Class 5 General Unsecured Claims. In the event that the total Allowed Claims in this Class are less than $11,000, the balance will be returned to the Post Confirmation Debtor to be used in its general fund. In the event $11,000 does not equal 10% of the allowed claims in this Class, then the City will make up the shortfall from its general fund up to a maximum of $15,000 (including the $11,000 already set aside).

### ARTICLE V.
### ACCEPTANCE OR REJECTION OF THIS PLAN;
### EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

5.1 Classes Entitled to Vote. Each impaired Class of Claims shall be entitled to vote separately to accept or reject this Plan as provided in the Order entered by the Bankruptcy Court governing the voting and balloting procedures applicable to this Plan. **NOTWITHSTANDING THE FOREGOING, NO CLAIMANT WHO HOLDS A DISPUTED OR CONTINGENT CLAIM SHALL BE ENTITLED TO VOTE SUCH CLAIM UNLESS IT IS ALLOWED FOR VOTING PURPOSES, PURSUANT TO BANKRUPTCY RULE 3018(a) BY FINAL ORDER OF THE BANKRUPTCY COURT.**

5.2 Deemed Acceptance Without Vote. Any unimpaired class of Claims shall be deemed to have accepted this Plan and shall not be entitled to vote to accept or reject this Plan.

5.3 Class Acceptance Requirement/Section 1111(b) Election**.** An impaired class of Claims shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on this Plan. An impaired class of Claims shall have made the election permitted by Section 1111(b) of the Bankruptcy Code if such election is made by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims in the Class.

5.4 <u>Cramdown.</u>  Notwithstanding the rejection or deemed rejection of this Plan by any class of Claims, the Debtor hereby requests that the Bankruptcy Court confirm this Plan in accordance with Bankruptcy Code §§ 943 and 1129(b) (as incorporated under Chapter 9 by Bankruptcy Code § 901.)

## ARTICLE VI.
## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS

6.1 <u>Designation of Impaired Classes</u>.  Classes 2, 3, 4 and 5 are impaired by the Plan and, subject to the limitations stated in Article V above, are entitled to vote to accept or reject the Plan.

## ARTICLE VII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 <u>Rejected if Not Assumed.</u>  All contracts and leases of the Debtor that constituted executory contracts or unexpired leases as of the Petition Date shall be rejected as of the Effective Date, except for such contracts and leases that (a) have been assumed or rejected pursuant to Order of the Bankruptcy Court entered prior to the Effective Date, (b) have been renegotiated and either assumed or rejected on renegotiated terms pursuant to Order of the Bankruptcy Court entered prior to the Effective Date, (c) are the subject of a motion to assume that is pending before the Bankruptcy Court on the Effective Date, (d) are the subject of a motion to approve renegotiated terms and assumption or rejection on renegotiated terms that is pending before the Bankruptcy Court on the Effective Date, or (e) are specifically treated otherwise in this Plan or in the Confirmation Order.  Contracts rejected or assumed pursuant to section 7.1(a)-(e) shall be rejected or assumed, as the case may be, as of the date set forth in the operative motion, agreement or order arising therewith.

7.2 <u>Disputed as to Executory/Unexpired Status.</u>  Notwithstanding Section 7.1 of this Plan, if on the Effective Date there is a pending dispute as to whether a contract is executory or a lease is unexpired, the Post Confirmation Debtor's rights to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.

7.3 <u>Expired Contracts or Leases.</u>  Any contract or lease that expired pursuant to its terms prior to the Effective Date, and that has not been assumed or rejected by Final Order prior to the Effective Date, is to the extent required, hereby specifically rejected.

7.4 <u>Bar to Rejection Damages.</u>  If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable unless a proof of claim is filed with the Bankruptcy Court and served upon the Post Confirmation Debtor as follows: (a) if the Claim arises from the rejection of an

{L & B 07314/0004/L0197888.DOC}
HOUSTON: 040157.00491: 1164082v5

executory contract or unexpired lease by operation of any provision of this Plan, thirty (30) days after the date of service of notice of the Confirmation Order, or (b) if the Claim arises from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court (other than the Confirmation Order) authorizing rejection of such contract or lease, thirty (30) days after service of notice of the entry of such Final Order.

7.5 Claims Arising from Assumption or Rejection. All Allowed Claims arising from the assumption of an executory contract or unexpired lease shall be treated as Class 1 Administrative Claims to the extent determined by Final Order of the Bankruptcy Court; all Allowed Claims arising from the rejection of an executory contract or unexpired lease shall be treated as Class 5 General Unsecured Claims pursuant to Section 4.5 of this Plan unless otherwise ordered by Final Order of the Bankruptcy Court; and all other Allowed Claims relating to an executory contract or unexpired lease shall have such status as they may be entitled to under the Bankruptcy Code as determined by Final Order of the Bankruptcy Court.

## ARTICLE VIII.
## IMPLEMENTATION PROVISIONS OF PLAN

8.1 Post Confirmation Debtor.

From and after the Effective Date, the Post-Confirmation Debtor will continue in existence as authorized by the laws of Texas.

The Post-Confirmation Debtor will continue to conduct the business of a municipality and such other activities as it may be permitted to conduct by (i) applicable law, and (ii) the Plan Documents, as may be amended or superseded from time to time.

8.2 Post Confirmation Indenture Trustee.

The Bank of New York Trust Company, N.A. shall continue to serve as Indenture Trustee.

8.3 Property of the Debtor. Except as otherwise provided in the Plan, the Post Confirmation Debtor may dispose of its property, free of any restrictions contained in the Bankruptcy Code or imposed by the Bankruptcy Court but subject to the provisions of this Plan, after the Effective Date.

8.4 Management of Post Confirmation Debtor. The operations of the Post Confirmation Debtor shall be the general responsibility of the Mayor and City Council as is provided by applicable Texas law.

8.6 Preservation of the Debtor's Claims. All Claims and causes of action owned by the Debtor against any Person, causes of action that could have been brought by a creditor on the Debtor's behalf, and all causes of action created by the Bankruptcy Code not waived or released under the Plan shall be the property of, and be pursued by, the Post Confirmation Debtor as provided herein, including without limitation any causes of action arising under Chapter 5 of the

{L & B 07314/0004/L0197888.DOC}
HOUSTON: 040157.00491: 1164082v5

Bankruptcy Code. The Post Confirmation Debtor shall have the exclusive right to settle or compromise all such Claims and/or causes of action. The Court's approval shall not be required to settle or compromise any Claim and/or cause of action owned by the Debtor.

8.7 *Post Confirmation Obligations of Post Confirmation Debtor Under Texas Law.* The Post Confirmation Debtor shall retain all rights and have all responsibilities applicable under Texas law. The Post Confirmation Debtor shall meet all obligations incurred by it after the Effective Date.

8.8 *Issuance of Securities Under Plan.* In accordance with Bankruptcy Code § 1145(a), the issuance of any new securities under the Plan (including, if necessary, the issuance of any new Bonds reflecting the New Principal Balance) shall be exempt from registration under Section 5 of the Securities Act of 1933, 15 U.S.C.A. § 77e, as amended, and any other applicable state or local law requiring registration for any offer and/or sale of such securities. In addition, the issuance of such securities in accordance with the Plan shall constitute a "public offering" pursuant to Bankruptcy Code § 1145(c).

## ARTICLE IX.
## GENERAL PROCEDURES FOR OBJECTING TO CLAIMS
## AND RESOLVING AND TREATING DISPUTED CLAIMS

9.1 *Objection Deadline.* Unless another date is established by the Bankruptcy Court, all Objections to Claims shall be filed with the Bankruptcy Court and served on the holders of such Claims by the later of (a) the Effective Date or (b) the date that is sixty (60) days after (i) a particular proof of claim has been filed. If an Objection has not been filed to a Claim by the deadlines established herein, the Claim shall be treated as an Allowed Claim; provided, however, that no Objection shall be required with respect to a Claim that is otherwise a Disputed Claim. The Objection deadlines established herein shall not apply to Claims and causes of action held by the Debtor that must be asserted through an adversary proceeding rather than an Objection.

9.2 *Prosecution of Objections.* The Post Confirmation Debtor shall, in its sole discretion, litigate to judgment, settle, or withdraw Objections to Claims. Notice of any proceedings with respect to an Objection, including a settlement or withdrawal, shall be sufficient if served by the Post Confirmation Debtor on the holder of the Claim to which Objection has been made and upon counsel for the U.S. Trustee. Rule 9019 of the Bankruptcy Rules shall not apply to the settlement or withdrawal of any Objection.

9.3 *Preservation of Objections.* Except as otherwise provided in this Plan or in the Confirmation Order or other Final Order, no compromise, waiver or release of Claims, demands or causes of action held by the Debtor that may be provided for in this Plan or in any Final Order shall in any way limit or impair the right of the Post Confirmation Debtor to prosecute Objections to Claims, and the Post Confirmation Debtor hereby retains all Objections to the allowability of a Claim and all affirmative and negative defenses associated with such Objections. Notwithstanding the existence of a colorable objection to the Claim, the Debtor and Post Confirmation Debtor shall determine, in its sole discretion, whether an objection to a Claim

or Claims should be filed and may, in its sole discretion, decline to file and/or prosecute any objection to a Claim or Claims.

9.4     No Distributions Pending Resolution of Objections.  Notwithstanding any other provision of this Plan, no distributions shall be made with respect to a Disputed Claim (or any Disputed portion of a Claim if such Claim is not severable) by the Post Confirmation Debtor unless and until all Objections to such Disputed Claim have been determined by Final Order.

9.5     Safekeeping of Distributable Property.  Pending entry of a Final Order determining the Objection to any Disputed Claim, the Post Confirmation Debtor shall take appropriate steps to safeguard the sums that would be distributed on account of such Claim if Allowed, but the Post Confirmation Debtor shall not be required to establish any formal escrow or reserve for such distributed property unless it determines that an escrow or reserve is necessary to insure that such property is available if and when such Claim is Allowed.

9.6     Distribution Rights After Allowance.  If a Disputed Claim is determined to be an Allowed Claim by Final Order, the holder of such Claim shall receive the distributions intended for such Claim under this Plan.

## ARTICLE X.
## PROVISIONS REGARDING DISTRIBUTIONS

10.1    Date of Distributions.  Any distributions to be made under this Plan shall be made on the Distribution Date, or such other date provided for in this Plan, or as the Bankruptcy Court may otherwise order. In the case of any Bondholder Claims, all distributions made by the Post Confirmation Debtor will be distributed on the Effective Date to the Indenture Trustee, for further distribution to the beneficial holders of Bondholder Claims in accordance with the Indenture, the Ordinance and other applicable Bond documents.

10.2    Means of Cash Payment.  Cash payments made pursuant to this Plan shall be in U.S. funds, by check drawn on a domestic bank, or, at the Post Confirmation Debtor's option, by wire transfer from a domestic bank.

10.3    De Minimis Distribution.  No distribution of less than five dollars ($5.00) shall be made to any holder of an Allowed Claim.  The Allowed Claim producing the *de minimis* distribution shall be canceled and discharged, and the *de minimis* distribution shall be retained by the Post Confirmation Debtor.  At the option of the Post Confirmation Debtor, retained *de minimis* distributions shall be redistributed to other Claimants in the Class in which the Allowed Claim is classified, or used to satisfy its obligations identified in Article 8.7.

10.4    Delivery of Distribution.  Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of claim filed by such holders (or at the last known address of such holder if no proof of claim is filed) or if the Debtor has been notified in writing of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Post Confirmation Debtor are notified of such holder's then current address,

at which time all missed distributions shall be made to such holder without interest. All Claims for undeliverable distributions shall be made on or before the later of the second anniversary of the Effective Date and the date ninety (90) days after such Claim is Allowed. After such date, all unclaimed distributions shall revert to the Post Confirmation Debtor, and the Claim of any holder with respect to such distributions shall be discharged and forever barred.

10.5    Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within six (6) months after the date of issuance thereof. Request for reissuance of any check shall be made directly to the Post Confirmation Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of the second anniversary of the Effective Date or the date ninety (90) days after such check becomes null and void pursuant thereto. After such date, all claims in respect of void checks shall be discharged and forever barred.

10.6    Due Authorization.  Each and every holder of a Claim who elects to participate in the distributions provided for in this Plan warrants that such holder is authorized to accept, in consideration of its Claim against the Debtor, the distributions provided for in this Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such holder of a Claim under this Plan.

10.7    Setoffs.  Except as specifically provided otherwise in this Plan, the Post Confirmation Debtor may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that can be asserted against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Post Confirmation Debtor of any such Claim that can be asserted against such holder.

10.8    Prepayment.  Unless this Plan otherwise provides, the Post Confirmation Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time.

### ARTICLE XI.
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND EFFECTIVENESS OF THIS PLAN

11.1    Conditions to Confirmation.  Confirmation of this Plan shall not occur unless each of the following conditions precedent has occurred:

a.  The Bankruptcy Court shall have approved the Disclosure Statement by a Final Order;

b.  The Indenture Trustee shall have received an opinion from its tax counsel acceptable to the Indenture Trustee opining that the proposed modification to the Bonds and the treatment of the Bondholders set forth in this Plan will not

        adversely impact the tax-exempt status of the Bonds under the United States Internal Revenue Code of 1986, as amended (including without limitation all U.S. Treasury regulations, judicial decisions and published rulings and pronouncements of the United States Internal Revenue Service); and

    c.    The Confirmation Order, in form and substance acceptable to the Debtor, shall have been entered by the Bankruptcy Court.

    11.2    <u>General Conditions to Effectiveness</u>. Notwithstanding any other provision of this Plan or the Confirmation Order, the Effective Date of this Plan shall not occur unless and until each of the following conditions precedent have been satisfied:

    a.    The Confirmation Order shall have been entered.

## ARTICLE XII.
## RETENTION OF JURISDICTION

    12.1    <u>Jurisdiction Retained.</u>  After the Effective Date, the Bankruptcy Court shall have the jurisdiction of all matters arising under, arising out of or relating to this Case including, but not limited to, the following:

- To insure that the purpose and intent of this Plan are carried out;

- To consider any modification of this Plan under section 1127(d) of the Bankruptcy Code before Substantial Consummation;

- To hear and determine all Claims, controversies, suits, and disputes against the Debtor;

- To hear and determine all Objections to Claims, controversies, suits and disputes that may be pending at or initiated after the Effective Date;

- To classify the Claims of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine Objections which may be filed to Claims;

- To hear, determine, and enforce all Claims and causes of actions which may exist on behalf of the Debtor, including, but not limited to, any right of the Debtor to recover such Claims, causes, or rights;

- To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, execution, or enforcement of this Plan;

- To enforce and interpret by injunction or otherwise the terms and conditions of this Plan;

- To enter an Order concluding and terminating this Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or Confirmation Order which may be necessary or helpful to carry out the purposes and intent of this Plan;

- To determine all questions and disputes regarding title to the assets of the Debtor; and

- To consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order.

12.2 <u>Failure of the Bankruptcy Court to Exercise Jurisdiction.</u> If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Case, the provisions of this Article XII shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII.
## AMENDMENTS TO BOND DOCUMENTS

13.1 <u>Amendments to the Ordinance</u>. The Ordinance shall be expressly amended as follows:

    a. <u>Ordinance § 2.05—Deposits into Funds</u>: Section 2.05 of the Ordinance shall be replaced with the following: "Commencing on December 15, 2007, the City covenants to deposit with the Indenture Trustee an amount equal to $79,672.47 to the Interest and Sinking Fund. Thereafter, the City covenants to make an additional $79,672.47 payment to the Interest and Sinking Fund every six months, with such semi-annual payments being made on June 15 and December 15 of each succeeding year until the Bonds mature. On June 15, 2007, the Interest and Sinking Fund will be funded with an initial amount of $301.20."

    b. <u>Ordinance § 3.02(b)—Date, Denomination, Maturities and Interest</u>. Section 3.02(b) of the Ordinance shall be replaced with the following: "The Bonds shall mature in full on June 15, 2027."

    c. <u>Ordinance § 3.02(c)—Date, Denomination, Maturities and Interest</u>. Section 3.02(c) of the Ordinance shall be replaced with the following: "Interest shall accrue and be paid on each Bond respectively until its redemption or prior maturity from the later of the Bond Date or the most recent Interest Payment Date to which interest has been paid or provided for at a rate of 5.0% per annum. Such interest shall be payable semi-annually on December 15 and June 15 of each year, commencing on December 15, 2007."

d. Ordinance § 4.02(b)—Mandatory Redemption. Section 4.02(b) of the Ordinance shall be replaced with the following: "The Bonds shall be subject to mandatory redemption prior to their scheduled maturity, in part by lot, in such manner as shall be specified by the Indenture Trustee, for a price equal to the principal amount of the Bonds without premium plus accrued interest to the date fixed for redemption, on the redemption dates and in the principal amounts as follows:

| Redemption Date | Scheduled Principal Amount |
|---|---|
| December 15, 2007 | $ 29,000.00 |
| June 15, 2008 | 31,000.00 |
| December 15, 2008 | 31,000.00 |
| June 15, 2009 | 32,000.00 |
| December 15, 2009 | 33,000.00 |
| June 15, 2010 | 33,000.00 |
| December 15, 2010 | 35,000.00 |
| June 15, 2011 | 35,000.00 |
| December 15, 2011 | 36,000.00 |
| June 15, 2012 | 37,000.00 |
| December 15, 2012 | 38,000.00 |
| June 15, 2013 | 39,000.00 |
| December 15, 2013 | 40,000.00 |
| June 15, 2014 | 41,000.00 |
| December 15, 2014 | 42,000.00 |
| June 15, 2015 | 43,000.00 |
| December 15, 2015 | 44,000.00 |
| June 15, 2016 | 45,000.00 |
| December 15, 2016 | 46,000.00 |
| June 15, 2017 | 48,000.00 |
| December 15, 2017 | 48,000.00 |
| June 15, 2018 | 50,000.00 |
| December 15, 2018 | 51,000.00 |
| June 15, 2019 | 53,000.00 |
| December 15, 2019 | 53,000.00 |
| June 15, 2020 | 55,000.00 |
| December 15, 2020 | 57,000.00 |
| June 15, 2021 | 57,000.00 |
| December 15, 2021 | 60,000.00 |
| June 15, 2022 | 60,000.00 |
| December 15, 2022 | 63,000.00 |
| June 15, 2023 | 63,000.00 |
| December 15, 2023 | 66,000.00 |
| June 15, 2024 | 67,000.00 |
| December 15, 2024 | 68,000.00 |
| June 15, 2025 | 71,000.00 |
| December 15, 2025 | 72,000.00 |
| June 15, 2026 | 74,000.00 |
| December 15, 2026 | 76,000.00 |
| June 15, 2027 | 78,000.00 |

      e.    <u>Ordinance § 6.02(a)—Form of Bond</u>. The form of Bond set forth in Section 6.02 of the Ordinance shall remain unchanged except that a legend shall be affixed to each form of Bond reflecting that such Bond has been modified in accordance with the provisions of the Plan and Confirmation Order.

13.2    <u>Amendments to the Indenture</u>. The Indenture shall be expressly amended as follows:

      a.    <u>Indenture § 2.01(b)</u>. Section 2.01(b) of the Indenture shall be replaced with the following: "In the Ordinance, the City has covenanted to deposit with the Indenture Trustee, commencing on December 15, 2007, an amount equal to $79,672.47 to the Interest and Sinking Fund. Thereafter, so long as any Bonds remain outstanding, the City shall deposit an additional amount equal to $79,672.47 to the Interest and Sinking Fund every six months, with such semi-annual payments being made on June 15 and December 15 of each succeeding year until the Bonds mature. On June 15, 2007, the Interest and Sinking Fund will be funded with an initial amount of $301.20."

13.3    <u>All Other Provisions Effective</u>. Except as otherwise expressly amended in this Plan, the Ordinance, the Indenture and all other Bond-related documents shall in all respects remain in full force and effect.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

14.1    <u>Revocation</u>. The Debtor reserve the right to revoke and withdraw this Plan at any time prior to the Confirmation Hearing. If the Debtor revokes or withdraws this Plan prior to the Confirmation Hearing then this Plan shall be null and void.

14.2    <u>Headings.</u> Headings are utilized in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

14.3    <u>Entire Agreement.</u> This Plan, as described herein, and the Plan Documents, set forth the entire agreement among the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

14.4    <u>Binding Effect.</u> As of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Post Confirmation Debtor, the holders of Claims, and their respective successors and assigns.

14.5 _Modification of this Plan._ Modifications of this Plan may be proposed in writing by the Debtor at any time before Confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after Confirmation and before its Substantial Consummation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms this Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. (All references to Bankruptcy Code sections in this paragraph are to those sections made applicable to this Chapter 9 case by Bankruptcy Code §§ 103(f) and 901.)

14.6 _Notices._ Other than the deadlines established in the Order approving the Disclosure Statement to this Plan, which deadlines shall be applicable in strict conformity with such Order and on the specific days set forth therein, all notices, requests, elections or demands in connection with this Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by regular U.S. mail, postage prepaid, and sent to the following parties, addressed to:

**Debtor:**

The City of Camp Wood
c/o Linda Webb, City Secretary
P.O. Box 130
Camp Wood, Texas 78833-0130

with a copy to:

David S. Gragg
Langley & Banack, Inc.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212

**Bondholders:**

Thomas H. Grace
Locke, Liddell & Sapp, L.L.P.
600 Travis, Suite 3400
Houston, Texas 77002-3095

14.7 _Post Confirmation Obligations of Post Confirmation Debtor Under Texas Law._ The Post Confirmation Debtor shall retain all rights and have all responsibilities applicable under Texas law. The Post Confirmation Debtor shall meet all obligations incurred by it after the Effective Date.

14.8    Discharge of Debtor.

Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtor shall (i) be deemed discharged and released under Section 944 of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), (502(h), or 502(i) of the Bankruptcy Code, whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (B) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (C) the holder of a Claim based upon such debt accepted the Plan.

14.9    Injunction.

Except as provided in the Plan or in the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim or other debt or liability that is discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or its property on account of any such discharged Claims, debts, or liabilities or rights:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor; or (v) commencing or continuing any action, in any manner in any place, that does not comply with or is inconsistent with the provisions of the Plan.

DATED:  May 2, 2007

                                              THE CITY OF CAMP WOOD
                                              By:     /s/ Emma Dean
                                                     Emma Dean, Mayor

                                               /s/ David S. Gragg
                                              David S. Gragg
                                              dgragg@langleybanack.com
                                              Marc J. Schnall
                                              mschnall@langleybanack.com
                                              Langley & Banack, Incorporated
                                              745 E. Mulberry, Suite 900
                                              San Antonio, Texas 78212
                                              Telecopy:  (210) 735-6881
                                              Telephone:  (210) 736-6600
                                              ATTORNEYS FOR THE
                                              CITY OF CAMP WOOD

{L & B 07314/0004/L0197888.DOC}
HOUSTON: 040157.00491: 1164082v5